**Jacques ABADIE, III, Chief Procurement Officer, Petitioner,**

v.

**ORGANIZATION FOR ENVIRONMENTAL GROWTH, INC., Respondent.**

No. 01–AA–982.

District of Columbia Court of Appeals.

Argued May 21, 2002.

Decided Sept. 26, 2002.

James C. McKay, Jr., Senior Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for petitioner.

John Umana, for respondent.

Before STEADMAN and WASHINGTON, Associate Judges, and NEBEKER, Senior Judge.

STEADMAN, Associate Judge:

We have before us a second appeal arising from a dispute between the Organization for Environmental Growth ("OFEGRO") and the District of Columbia following the District's termination for convenience of a contract relating to downtown traffic planning. The dispute concerns the award of termination costs to OFEGRO. The Contract Appeals Board ("CAB" or "the Board") originally awarded OFEGRO $575,223.18 in net termination costs.[1] On appeal, we reversed this award and remanded the case to the Board with instructions to recalculate the amount of awardable termination costs pursuant to our opinion. *District of Columbia v. Organization for Envtl. Growth, Inc.*, 700 A.2d 185 (D.C. 1997) ("*OFEGRO I*").[2] On remand, the

---

1. The CAB calculated the total termination costs as $702,496.67, but subtracted the $127,273.49 that the District had already paid on the contract.

2. This opinion lays out in detail the background and facts relating to this extraordinarily protracted dispute, which there is no need to repeat here. We have followed the caption of that prior appeal in naming OFEGRO as the sole respondent.

Board awarded net termination costs of $193,211.77.[3]

The District again appeals. It argues that the CAB award was not supported by substantial evidence because OFEGRO did not prove that its claimed termination costs were reasonable or allocable to the contract and that the CAB erred in refusing to apply the loss adjustment provision. We agree that the testimony explicitly relied upon by the CAB does not constitute substantial evidence of reasonableness or allocability. We must again reverse the Board's decision and remand the case for further proceedings.

## I.

In the prior appeal of this case, we set forth the applicable standard of review as well as the sources of law on which we rely when reviewing decisions of the CAB:

> '[T]he decision of the Board on questions of fact shall be final and conclusive' unless it is arbitrary, capricious, *or not supported by substantial evidence.* D.C.Code § 1–1189.7 (1992) [now codified at D.C.Code § 2–309.07 (2001)]. On questions of law, although the Board's decision is not final or conclusive, 'we give careful consideration to [its] interpretation because legal interpretations by tribunals having expertise are helpful even if not compelling.' *Fruin–Colnon Corp. v. United States,* 912 F.2d 1426, 1429 (Fed.Cir.1990), cited in *Dano Resource Recovery, supra,* 620

A.2d at 1352.[4] We also look not only to the case law on which the Board relied but to other decisions of the United States Court of Appeals for the Federal Circuit, the former United States Court of Claims and its successors, and the various federal boards of contract appeals, 'all of which have particular expertise in this area.' *Id.* at 1351 (citation omitted; emphasis added).

700 A.2d at 198 (footnote omitted).

It does not appear disputed that termination costs are allowed only if they are reasonable, allocable to the contract, consistent with cost accounting standards and generally acceptable accounting principles and practices, and consistent with any limitations in the contract or regulations with respect to the type or amounts of costs.[5] See 48 C.F.R. § 31.201–2 (2002); *see, e.g., Hydrothermal Energy Corp. v. United States,* 26 Cl.Ct. 1091, 1104 (1992) (costs must not only be incurred they must also be reasonable and allocable to the contract). In determining reasonableness, the applicable portion of the Federal Acquisition Regulation (FAR) provides:

> A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business. Reasonableness of specific costs must be examined with particular care in connection with firms or their separate divisions that may not be subject to ef-

3. The CAB was instructed by this court to reduce the amount of the original award from $575,223.18 to no more than the original total contract price ($293,075.06) as reduced by the amount of payments already made ($127,-273.49), leaving a total possible award amount of $165,801.57, plus undisputed additional costs of $27,410.20. *See OFEGRO I* at 202–03. This court noted, however, that "the actual payment may turn out to be far less." *Id.* at 203. The CAB awarded to OFEGRO this amount in its entirety.

4. The full citation of this case is *Dano Resource Recovery, Inc. v. District of Columbia,* 620 A.2d 1346, 1352 (D.C.1993).

5. The District and OFEGRO both agree that the contract is governed by federal cost principles and OFEGRO does not challenge the application of the Federal Acquisition Regulations. FAR §§ 49.201(a), (c), which allows for a liberal approach for proving costs incurred under fixed price contracts, does not undermine the need for the costs to be reasonable and allocable to the contract.

fective competitive restraints. *No presumption of reasonableness shall be attached to the incurrence of costs by a contractor. If an initial review of the facts results in a challenge of a specific cost by the contracting officer or the contracting officer's representative, the burden of proof shall be upon the contractor to establish that such cost is reasonable.*

48 C.F.R. § 31.201–3 (2002).

■ The CAB recognized that OFEGRO's termination costs had to satisfy the standard of reasonableness. In determining reasonableness the CAB noted that the "District did not introduce evidence questioning the reasonableness of the costs shown by OFEGRO." [6] However, since the burden is on OFEGRO to prove that their costs were reasonable, without the aid of any presumption, the failure of the District to disprove the reasonableness of OFEGRO'S costs is not determinative. *See Corban Industries, Inc. v. United States*, 24 Cl.Ct. 284, 286 (1991) ("[t]he claimant bears the burden of proving" termination costs) and cases cited; *see also* J. CIBINIC & R. NASH, ADMINISTRATION OF GOVERNMENT CONTRACTS 1099 (3d ed.1995) ("[t]he contractor has the burden of establishing the amount of incurred costs, and, in the absence of evidence to the contrary,

the contracting officer's termination allowance will be accepted").[7]

■ We turn then to the proof of reasonableness explicitly relied on by the CAB. In its opinion on remand dealing with that issue, the CAB stated: "Prior to the award of this contract, the Federal Highway Administration ("FHwA") estimated the cost of the work contracted to OFEGRO to be approximately $500,000. Finding of Fact 14 [8] ... The Board found total 'Costs of Performance' of $383,357.66. This amount was well within the estimate of the total cost of the work by FHwA. On the basis of the Federal estimate, we hold that the standard of reasonableness was satisfied." The testimony referred to [9] was that of Arthur J. Hill and Patricia (Fairbairn) Nicoson,[10] who testified before the Board about the FHwA estimate. What the CAB essentially did, as we read the opinion, was to take OFEGRO's costs of performance to the time of termination, which amounted to $383,357.66, and hold that this amount was reasonable because it fell within the federal estimate of $500,000. We are unable to follow this reasoning as constituting substantial evidence.

First of all, the testimony of Mr. Hill and Ms. Nicoson does not by itself appear to provide substantial evidence that OFEGRO's costs were reasonable. Upon

6. The District has consistently argued that OFEGRO has the burden of proving its costs and has failed to do so. Specifically after our initial remand the District argued that OFEGRO did not document or substantiate its costs.

7. The contracting officer determined that OFEGRO was entitled to $10,197 in termination costs. In an intermediate administrative appeal prior to the CAB, OFEGRO was awarded certain additional unquantified costs, subject *to further proof. OFEGRO I*, 700 A.2d at 195–96.

8. The Board also noted that the record reflected "appellant pursued performance with diligence and in good faith" and in a footnote,

without apparent reliance thereon, that the total amount of the succeeding contract for similar work was $1,258,045.

9. Finding of Fact 14, referenced in the CAB opinion quoted above, in turn cites to the same testimony.

10. Mr. Hill was the Division Administrator for the D.C. Division of the Federal Highway Administration. Ms. Nicoson was a transportation planner at the Department of Public Works of the District of Columbia, who had worked on securing funding from the FHwA and developing the scope of work and had acted as project manager in the early period.

careful examination of Ms. Nicoson's testimony, it seems clear that her $500,000 estimate was in fact a "total estimate" which included what she called an "enormous contribution of other staff time in addition to the consultant" in connection with the considerable costs associated with overseeing the contract, producing traffic data, and doing other kinds of studies, costs for which OFEGRO would not have been responsible. The record simply does not indicate what portion of Ms. Nicoson's $500,000 estimate was allocable to OFEGRO and it, therefore, could not form the basis of a reasonableness finding. Mr. Hill's testimony [11] reveals that his $500,000 quote was merely a general estimate based on his experience in the field, which provided him a "sixth sense" about such matters, rather than precise considerations or calculations. While Mr. Hill's experience in the field is of course relevant, Mr. Hill's general estimate, unsupported by any data or calculations, would not satisfy the substantial evidence standard.

In addition, the $500,000 FHA estimate was based on the total cost of the completed project. OFEGRO, however, never completed the project. Therefore, even if the $500,000 estimate somehow provided a starting point for holding that the standard of reasonableness was satisfied, this estimate presumably would need to be adjusted to account for the fact that the project was not completed.[12]

**11.** We note that Mr. Hill agreed to testify only to "factual matters within his own personal knowledge" and he was not qualified as an expert witness.

**12.** We do not readily find in the briefs or the record any percentage completion figure. With respect to allocation, the Board's opinion does not cite any specific evidence on that issue. Such a determination is only implicitly found in the Board's statement that "costs reasonably incurred in performance of the

OFEGRO invites us to examine the record for supporting evidence beyond that relied upon by the CAB. This we will not do in this case. We do not ourselves scour the record in search of evidence or rely on evidence other than what the Board itself relied on to support its findings. We leave that task for the remand, making ourselves no determination at this point whether or not such additional evidence exists or whether the record should be reopened for that purpose. *See Colton v. District of Columbia Dep't of Employment Servs.,* 484 A.2d 550, 552 (D.C.1984) ("[T]his court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue.") (citation omitted); *Fontenot v. District of Columbia Dep't of Employment Servs.,* 804 A.2d 1104 (D.C.2002) (refusing to find sufficient evidence where agency's conclusion rested upon a questionably dated document, despite other evidence in the record).

**II.**

The District's second argument, that the CAB erred in refusing to apply the loss adjustment provision, also could require a remand. This court previously held, in *OFEGRO I,* that OFEGRO's termination costs might have to be reduced by the "possible application of any loss adjustment." 700 A.2d at 200. According to the Material Management Manual ("MMM") § 2642.6.E.1.(c),[13] "if it appears that the

total contract are allowable" and its overall determination that OFEGRO was entitled to $193,211.77 in termination costs. While it appears likely that the termination costs awarded were in fact allocable to the contract, this issue as well should be more directly addressed on remand.

**13.** The language contained in this provision is essentially identical to that found in 48 C.F.R. 52.249–2(g)(1)(iii) (2002).

Contractor would have sustained a loss on the entire Contract had it been completed, no profit shall be included or allowed under this subparagraph and an appropriate adjustment shall be made reducing the amount of the settlement to reflect the indicated rate of loss." [14].

The CAB in the opinion on remand found that there was little question that "OFEGRO incurred costs exceeding the original contract price." However, it refused to apply the loss adjustment provision on the ground that "there had been an uncompensated constructive change in the required performance due to the delay in executing the contract and the acceleration of particular work" and the District had not shown that but for these changes there would have been a loss. It noted that "[o]ther contract appeals boards have held that the adjustment for loss provision cannot be construed to include a loss caused by Government action in a contractual capacity where, as here, the actual additional costs cannot be computed."

 The District points out, however, that, earlier in the remand opinion, the CAB ruled that OFEGRO's equitable adjustment for the acceleration claim must be denied because it had not met the burden of establishing what increased costs were attributable to the acceleration.[15] Similarly, in their initial opinion the CAB determined that OFEGRO had not met its burden to establish that the District's delay in the notice to proceed with the contract resulted in increased costs and indeed had submitted no proof whatever on

the issue. At least on their face, these findings appear to conflict with the proposition apparently relied upon by the Board that the "actual additional costs *cannot* be computed." Since a remand is required in any event, the CAB should revisit this issue of the possible application of the loss adjustment clause.

Accordingly, we reverse the Board's award of termination costs and remand the case for further proceedings consistent with this opinion.

*So ordered.*

14. As illustrated by the plain language of this provision, OFEGRO's argument that the loss adjustment provision applies only to profits is meritless. OFEGRO's argument that the MMM was not adopted into law comes far too late. *OFEGRO I* cites its provisions repeatedly as controlling this litigation.

15. In its initial opinion, the CAB recognized that OFEGRO had not established with any

certainty the number of additional staff or labor hours expended in performing the accelerated work. Nevertheless, the CAB, using the "jury verdict" method, awarded OFEGRO $17,000.00 in compensation for the out-of-sequence work. This court, in *OFEGRO I*, reversed that award and said that any acceleration adjustment must be recalculated using actual cost data.