**George BROWNLEE, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, Board of Physical Therapy, Respondent.**

No. 08–AA–700.

District of Columbia Court of Appeals.

Argued June 16, 2009.

Decided Sept. 3, 2009.

of subchapter[ ] ... XVI–A", which includes D.C.Code § 616.52(b)).

Bernard Coleman, Jr. for petitioner.

Richard S. Love, Senior Assistant Attorney General, with whom Peter J. Nickles, Acting Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for respondent.

Before WASHINGTON, Chief Judge, and REID and KRAMER, Associate Judges.

REID, Associate Judge:

Petitioner, George Brownlee, petitions for review of a decision by the District of Columbia Board of Physical Therapy ("the Board"). The Board found him liable for his failure to review and co-sign a physical therapy assistant's documentation, or to assign another physical therapist to perform the tasks required by 17 DCMR § 6710.12 (1990). Mr. Brownlee contends that the Board exceeded its authority, and its findings and conclusions are not based on substantial evidence. We affirm the decision of the Board because (1) the Board's construction of its regulations was reasonable and requires deference; and (2)

the Board's decision is based on substantial record evidence.

## FACTUAL SUMMARY

The record shows that the Health Professional Licensing Administration ("HPLA"), Board of Physical Therapy, received a referral report from the District of Columbia Department of Health, Health Regulation and Licensing Administration ("HRLA") concerning patient records signed by a physical therapist assistant but lacking the required signature of a licensed physical therapist. HPLA assigned its investigation for the Board to Mike Donatelli. The investigation focused on records pertaining to patients of the physical therapy wing of Specialty Hospital. Ergo Solutions, LLC which was co-owned by Mr. Brownlee, a physical therapist, provided physical therapist assistants and physical therapists for the Hospital.

Mr. Donatelli subpoenaed Ergo Solutions' records of physical therapists ("PT") and physical therapist assistants ("PTA"), and conducted a random sampling of several patient files, as well as the files of a patient known as R.D. whose records lacked the counter-signature of a physical therapist. He found several other forms lacking a PT's co-signature. Chiku Ellen Kankhwende was the PTA on all these forms.[1] Ergo Solutions was unable to provide information as to who was designated to supervise Ms. Kankhwende or which PT was on site during the times the reports were filed.

The Board issued a "notice of intent to take disciplinary action" to Mr. Brownlee on November 30, 2007, and an amended notice on January 15, 2008. The amended notice contained two charges:

Charge I: You failed to review and co-sign or assign a physical therapist to review and co-sign the documentation of a physical therapy assistant as required by 17 DCMR § 6710.12 for which the Board may take the proposed action pursuant to D.C. Official Code § 3–1205.14(a)(24)(2001).

Charge II: You failed to conform to the standards of acceptable conduct and prevailing practice within the physical therapy profession, for which the Board may take the proposed action pursuant to violation of D.C. Official Code § 3–1205.14(a)(26)(2001).

Several specifications relating to each charge also appeared in the amended notice. On February 19, 2008, during a hearing before three Board members, three witnesses were called. Mark Donatelli, an employee of the HPLA and the primary investigator concerning this case, testified for the government. Mr. Brownlee testified on his own behalf.[2]

In a decision dated June 9, 2008, which was based on the testimony, and on the documents admitted into evidence, the Board specifically found that:

(1) The evidence is sufficient to establish that the Respondent is the CEO and a co-owner of Ergo Solutions.

(2) The evidence is sufficient to establish that the PTA was an employee of Ergo Solutions.

(3) The evidence is sufficient to establish that the Respondent was the PTA's supervisor.

(4) The evidence is sufficient to establish that the progress notes by the PTA for patient I.B. on July 11, 2006, and July 12, 2006 were not countersigned.

---

1. The Board refers to her as a physical therapy student, but apparently she was hired as a PTA.

2. Ethel Johnson was called by Mr. Brownlee, but dismissed because her testimony was determined to be irrelevant.

(5) The evidence is sufficient to establish that the progress notes by the PTA for patient R.D. on July 17, 2006, July 18, 2006, July 19, 2006, July 20, 2006, and July 21, 2006, were not countersigned.

(6) The evidence is sufficient to establish that the progress notes by the PTA for patient G.B. on November 7, 2006, November 8, 2006, November 9, 2006, November 10, 2006, November 13, 2006, November 14, 2006, November 15, 2006, November 17, 2006, and November 20, 2006, were not countersigned.

The Board concluded that "the government proved by a preponderance of the evidence that [Mr. Brownlee] failed to review and co-sign, or assign a physical therapist to review and co-sign, the documentation of a PTA, as charged in charge I, specifications A, B and C of the Amended Notice." The Board also found Mr. Brownlee liable on the second charge, imposed a $5,000 fine for each charge, or a total $10,000 fine, and ordered Mr. Brownlee to take Board-approved courses in "Ethics" and "Standards of Care in Health Care Management." [3]

## ANALYSIS

Mr. Brownlee argues that the Board exceeded its legal authority by adding the phrase "or assign" to 17 DCMR § 6710.12,[4] thus changing the rule to make it apply to him, because he was not a direct supervisor of PTA Kankhwende and therefore he was not responsible for signing her forms under the existing rule. He maintains that the Board's decision was an unexplained departure from established precedent and it was "erroneous and inconsistent with the regulation."

The government supports the Board's construction of 17 DCMR § 6710.12, and the Board's conclusions. The government asserts that, the Board's interpretation of its regulation should be given deference because the addition of the phrase "or assign" did not impose any additional responsibility, and instead, provided "an alternative method for Mr. Brownlee, as the PTA's supervisor, as the director of rehabilitation services, and as CEO and the only co-owner of Ergo Solutions who had day-to-day responsibility for PT services at Specialty, to ensure that this PTA's documents were reviewed and co-signed as the regulation requires."

■ Generally, "[w]e review the [Board's] legal rulings *de novo,* but otherwise defer to the [Board's] determination so long as it rationally flows from the facts and is supported by substantial evidence on the record." *Safeway Stores v. District of Columbia Dep't of Employment Servs.,* 806 A.2d 1214, 1219 (D.C.2002) (*See also Cruz v. District of Columbia Dep't of Employment Servs.,* 633 A.2d 66, 70 (D.C. 1993)). " 'Substantial evidence' [is] more than a mere scintilla." *Stewart v. District of Columbia Dep't of Employment Servs.,* 606 A.2d 1350, 1352 (D.C.1992). Moreover, although we are vested "with the final authority on issues of statutory construction," *Harris v. District of Columbia Office of Worker's Comp. (DOES),* 660 A.2d 404, 407 (D.C.1995), "[w]e must defer to an agency's interpretation of the statute which it administers ... so long as that interpretation is reasonable and consistent

---

**3.** Mr. Brownlee's appeal does not address the second charge.

**4.** 17 DCMR § 6710.12 provides:
A physical therapist shall review and co-sign any documentation written by a physi-cal therapy student, physical therapist's assistant, physical therapist's aide, or first-time applicant for a physical therapy license practicing pursuant to § 6711.

with the statutory language. The agency's interpretation, therefore, is controlling unless it is plainly erroneous or inconsistent with the statute." *Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C.1996) (quoting *Lenkin Co. Mgmt. v. District of Columbia Rental Hous. Comm'n,* 642 A.2d 1282, 1285 (D.C.1994)).

We begin our analysis with the Board's statutory authority. The Board's primary statutory duty is to "regulate the practice of physical therapy, including practice by physical therapy assistants." D.C.Code § 3–1202.09(b) (2001). The statutory definition of "practice by physical therapy assistants" specifies that "the performance of selected physical therapy procedures and related tasks" by a PTA must be "under the direct supervision of a physical therapist." D.C.Code § 3–1201.02(12)(B). The Board is authorized by statute to perform certain duties assigned to Health Occupations Boards in aid of their respective mandates to regulate a particular profession—initiate and "conduct investigations of allegations of practices violating" statutory provisions governing health occupations; "conduct hearings"; enforce regulations; and "issue advisory opinions regarding compliance with standards of practice." D.C.Code § 3–1204.08 (2001). After a hearing, as required by D.C.Code § 3–1205.15 (2001), the Board has the authority to reprimand, revoke a license, or impose other disciplinary measures on PTs or PTAs. D.C.Code § 3–1205.14(c) (2001). Under D.C.Code § 3–1203.02 (2001), the Mayor may delegate powers to Occupational Health Boards, such as the Board of Physical Therapy, including the power to "mak[e] necessary rules relating to administrative procedures,"[5] and rules "necessary to implement [statutory] provisions" governing Health Occupations Boards.

The Board's regulatory authority is based on its statutory authority, powers, and duties. The regulations set out in 17 DCMR § 6710 (1990), govern lawful PTA and PT duties and practices. According to 17 DCMR § 6710.9 (1990), a PT should be responsible for "managing all aspects of the physical therapy care of each patient," including supporting documentation. Part of this responsibility extends to reviewing and co-signing documentation written by a PTA. 17 DCMR § 6710.12. Emphasis is placed on the need for PTA supervision, a theme revisited in 17 DCMR § 8209 (2008), which discusses lawful practice for PTs. A licensed PT is responsible for a PTA's actions while performing physical therapist functions under his or her supervision. 17 DCMR § 8209.4 (2008).

The critical question raised by this case is whether the Board's construction of its statute and regulations was reasonable, requiring deference, and whether its findings are based on substantial record evidence. Although "the judiciary is the final authority in issues of statutory construction,"[6] "we give careful consideration to the agency's interpretation [of its governing statute] because legal interpretations by tribunals having expertise are helpful even if not compelling."[7]

Here, Mr. Brownlee questions the authority of the Board to read the words "or assign" into 17 DCMR § 6710.12. With the reading of these words into the regulation, a physical therapist could fulfill the duty to "review and co-sign any documen-

**5.** D.C.Code § 3–1203.02(13) (2001).

**6.** *Doctors Council of the District of Columbia General Hosp. v. District of Columbia Pub. Employee Relations Bd.,* 914 A.2d 682, 695 (D.C.2007) (quoting *Belcon, Inc. v. District of* *Columbia Water & Sewer Auth.,* 826 A.2d 380, 384 (D.C.2003)).

**7.** *Id.* (citing *Abadie v. Organization for Envt'l Growth, Inc.,* 806 A.2d 1225, 1227 (2002)).

tation written by a physical therapy student," either by doing so directly or, where appropriate, assigning another physical therapist to do so. In the context of the application of the regulation to a physical therapist who functions also as the chief executive officer and co-owner of a corporation that hires PTs and PTAs for work in a hospital, we cannot say that the Board's construction of 17 DCMR § 6710.12 was unreasonable or inconsistent with statutory provisions governing its authority to regulate the practice of physical therapy. The emphasis of both the Board's statutory and regulatory authority appears to have been on the protection of patients through the supervision of a PTA by someone qualified to ensure correct care. D.C.Code § 3–1201.02(12)(B). Under its authority to regulate and to supervise PTAs and PTs, the Board has the latitude to recognize a reasonable alternative in a corporate setting to fulfilling the requirement of reviewing and co-signing patient records prepared by a PTA. Where the Chief Executive Officer is a physical therapist who may have supervisory duties in relation to a PTA, he may assign another PT to review and sign patient records, especially since the plain language of § 6710.12 does not specify that the "supervising" physical therapist must sign the documentation.[8] Section 6710.12 mandates only that "[a] physical therapist shall review and co-sign any documentation written by a ... physical therapy assistant ..."[9]

Thus, the Board did not exceed its authority or contradict the plain language of the regulation in applying 17 DCMR § 6710.12 to Mr. Brownlee's corporate situation. In short, we see no reason to disturb the Board's interpretation of its governing statute and implementation of regulations.

█ Furthermore, we are satisfied that the Board's findings are supported by record evidence. Mr. Donatelli's investigation revealed PTA documents for three different patients for whom Ergo Solutions provided therapy and which lacked PT co-signatures, patients I.B., R.D., and G.B. These documents evidenced a violation of 17 DCMR § 6710.12, and a failure to meet standards of acceptable practice within the physical therapist community.

Moreover, the Board has the power to discipline a licensed physical therapist who fails to adequately supervise a PTA under his or her supervision, including duties relating to required documentation. Here, the Board had to determine who was responsible for the violation. The investigation uncovered poor employment records on the part of Ergo Solutions. On cross-examination during his hearing, Mr. Brownlee acknowledged that the Board's exhibit G consisted of his response to Mr. Donatelli's record inquiry. The Board found that the response, in part, "stated that Ergo Solutions did not have any sign-in sheets or time cards for the PTs for the dates at issue and that any of the licensed PTs in the building who were on duty that day could have been supervising the PTA."

Mr. Brownlee disclaimed responsibility on all counts, stating that the poor records were solely the responsibility of Ergo Solutions' human resources department and the documents without co-signature were generated in a part of the hospital where he did not work. He stated that he did not know who PTA Kankhwende's supervisor was at the time, and that he should not

---

8. *See Veney v. United States,* 936 A.2d 811, 822 (D.C.2007) ("Statutory [or regulatory] construction begins with the plain language of the statute [or regulation].").

9. *Id.* at 822 (plain language of statute did not state that the trial judge must "personally" carry out the statutory duty).

be held personally responsible. Nevertheless, as the Board found, Mr. Brownlee "admitted on cross[-examination] that he was listed as the PTA's [Ms. Kankhwende's] supervisor on the PTA's initial competency checklist, [even though he] asserted that it was because the PTA sometimes worked in the nursing center component." He conceded that the competency checklist "stated only that he was the PTA's supervisor," with no limitation to the nursing center. Mr. Brownlee also testified that he is a licensed physical therapist, and has been for nearly thirteen years. At the time § 6710.12 was violated, he served as CEO of Ergo Solutions, Director of Physical Therapy at Specialty Hospital, and Ms. Kankhwende's "instructor supervisor." As a result, Ms. Kankhwende was a PTA performing physical therapy work under Mr. Brownlee's supervision. Finally, as CEO of Ergo Solutions and Director of Physical Therapy at Specialty Hospital, Mr. Brownlee was (by his own admission) in charge of quality assurance; the lack of records regarding PTA Kankhwende's supervision and the failure of a PT to co-sign patient evaluation forms fall solidly under the umbrella of quality assurance.

In sum, the record supports the Board's findings that Mr. Brownlee was not only listed initially as the PTA's supervisor, but that he was CEO of Ergo Solutions and in charge of quality assurance for the company. Thus, even if he was not the PTA's direct supervisor, he was her ultimate supervisor, and hence, the Board had the authority to find him liable for the failure to review and co-sign Ms. Kankhwende's patient documentation, or his failure to assign another PT to review and co-sign her documentation.

For the foregoing reasons, we affirm the Board's decision.

*So ordered.*