# District of Columbia
# Court of Appeals

No. 14-AA-396

FILED
AUG 18 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

DISTRICT OF COLUMBIA,

                    Petitioner,

    v.                             **CAB-D-1369, D-1419, & D-1420**

DISTRICT OF COLUMBIA CONTRACT APPEALS BOARD,

                    Respondent,

   and

PRINCE CONSTRUCTION CO., INC., and W.M. SCHLOSSER CONSTRUCTION CO., INC.,

                    Intervenors.

On Petition for Review of an Order
of the District of Columbia Contract Appeals Board

      BEFORE: BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges;* and REID, *Senior Judge.*

## J U D G M E N T

      This case came to be heard on the administrative record, a certified copy of the agency hearing transcript and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

      ORDERED and ADJUDGED that the order of the Contract Appeals Board ("CAB") is reversed with respect to the intervenors' delay claims related to the storm drainage pipe relocation, the fire pump installation, and the truck scales wiring. The case is remanded to the CAB to adjust the award accordingly. The CAB's decision is otherwise affirmed regarding the claims related to the roof deck modification, subsurface concrete obstruction, fire-suppression system permit, and concrete mix.

      For the Court:

      JULIO A. CASTILLO
      Clerk of the Court

Dated: August 18, 2016.

Opinion by Associate Judge Anna Blackburne-Rigsby.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-396

FILED  8/18/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

DISTRICT OF COLUMBIA, PETITIONER,

v.

DISTRICT OF COLUMBIA
CONTRACT APPEALS BOARD, RESPONDENT,

and

PRINCE CONSTRUCTION CO., INC. AND W.M. SCHLOSSER CONSTRUCTION CO., INC.,
INTERVENORS.

Petition for Review of a Decision of the
District of Columbia Contract Appeals Board
(CAB Nos. D-1369, D-1419 & D-1420)

(Argued October 6, 2015                                    Decided August 18, 2016)

*James C. McKay, Jr.*, Senior Assistant Attorney General for the District of Columbia, with whom *Eugene A. Adams*, Interim Attorney General at the time the brief was filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for petitioner.

*Richard K. Rothschild*, General Counsel for District of Columbia Contract Appeals Board, was on the statement in lieu of brief for respondent.

*Douglas L. Patin*, with whom *Michael J. Cohen* was on the brief, for intervenors.

Before BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*: In this case, a contractor seeks compensation for construction work that it completed on the Fort Totten Solid Waste Transfer Facility in Northeast Washington, D.C. for the District of Columbia, which went beyond the initial parameters of the construction contract. The primary question presented in this appeal is whether the contractor's claims for reimbursement are barred because the contractor failed to adhere to certain procedural requirements of the contract.

The District of Columbia ("Petitioner" or "District") hired joint venturers Prince Construction Co., Inc. and W.M. Schlosser Construction Co., Inc., ("Intervenors" or "Prince/Schlosser"), to complete alterations and repairs to the Fort Totten Solid Waste Transfer Facility. Unexpected and unbudgeted changes during the course of the project caused the project to be delayed by nearly one year, and increased the cost of completing the project by over one-half million dollars. Prince/Schlosser filed claims with the District to be compensated for the indirect costs (such as paying employees and subcontractors to work extended hours, increased overhead, lost profits, and additional bond costs) resulting from the delays ("delay claims"). Prince/Schlosser also filed separate claims for

additional uncompensated work it completed during the project. Principally, the District argues that Prince/Schlosser's delay claims are procedurally barred under the terms of the parties' contract because: 1) Prince/Schlosser did not "within [thirty] days after receipt of a written Change Order"[1] give the government written notice that it "intend[ed] to assert a claim," and 2) Prince/Schlosser did not submit "cost or pricing data and [a] certification that the cost or pricing data submitted was accurate . . . ."[2] On the merits, the District alternatively argues that it is not responsible for the direct or indirect costs associated with the claims.

The District of Columbia Contract Appeals Board ("CAB") rejected the District's arguments, found in favor of Prince/Schlosser, and awarded the contractor a total of $585,498.98, plus the interest accrued from the date of the filed claims, pursuant to D.C. Code § 2-359.09 (2012 Repl.). On review of the

---

[1] The District's contracting officer is permitted to issue "change orders," which the parties sometime refer to as "basic change directives," that "make any change in the work within the general scope of the Contract" at any time pursuant to Article 3 of the District's 1973 Standard Contract Provisions for Use with Specifications for District of Columbia Construction Projects ("Standard Contract Provisions"). Change orders could also be prompted when the contractor provides the contracting officer with what the parties call a "proposed change order" stating the date, circumstances, and sources of the order.

[2] *See* Section 3.C of the Standard Contract Provisions (stating the thirty-day notice requirement); Subsection H.33.E of the Contract (stating the "cost or pricing data" requirement).

record and the District's legal arguments, we affirm in part. We hold that Prince/Schlosser's delay claims are not procedurally barred by the contract because the District was on notice of the circumstances giving rise to the claims, and therefore was not prejudiced by the late claims. We also conclude that Prince/Schlosser's submission of data reflecting actual expenses already incurred instead of "cost and pricing data" does not bar its claims for reimbursement.

Regarding the merits, however, we hold that the CAB erred in awarding Prince/Schlosser damages for three of its claims: 1) the delay claim for relocating a storm drainage pipe, 2) the delay claim for installing a fire pump, and 3) the "constructive change" claim seeking compensation for installing wiring to five truck scales. Finally, we affirm the CAB's award to Prince/Schlosser on its remaining four claims relating to: 1) a roof deck modification, 2) subsurface concrete obstruction, 3) obtaining a fire-suppression system permit, and 4) purchasing a sulfate-resistant concrete mix. Thus, we reverse the CAB's decision on three claims, affirm the remaining four claims, and remand to the CAB to adjust the award accordingly.

## I.     Factual Background

On September 13, 2006, the District and Prince/Schlosser entered into a government construction contract, entitled "Contract No. POKT-2005-B-0085-CM for Alterations and Repairs of the Fort Totten Waste Transfer Facility" ("Contract").  "The project included the construction of a new, three-level building addition, including foundations, a 'tipping' floor [a floor where trash from incoming trucks is tipped into tractor trailers on the ramp below], walls, louvers, roofing, truck ramps, five truck scales, compaction cranes, and a truck wash facility."   The initial Contract price was $13,266,000, and the project was scheduled to be completed within 275 calendar days, with a set completion date of July 17, 2007.

During the course of construction, however, the District directed Prince/Schlosser to complete additional, previously unbudgeted work due to unanticipated problems and authorized price adjustments to compensate Prince/Schlosser for the additional work, which were reflected in five change orders.  Collectively, the five change orders authorized an increase to the Contract price of approximately $1,028,178, but only authorized a time extension to the

project by one day. The project did not meet the scheduled deadline and concluded on April 4, 2008, 261 days after the planned completion date.

The five change orders only compensated Prince/Schlosser for the costs directly associated with the unexpected problems, and they did not reimburse Prince/Schlosser for the indirect costs incurred during the additional 261 days of work that were not budgeted for under the contract. These indirect costs included paying employees and subcontractors to work extended hours, increased overhead, lost profits, and additional bond costs. In May 2008, one month after closing the project, Prince/Schlosser submitted written notice to the District that it would be seeking reimbursement for those additional costs. The parties negotiated in May and November of 2008, but failed to reach an agreement.

Prince/Schlosser then submitted delay claims to the District's contracting officer on April 23, 2009, in an effort to obtain compensation.[3] Prince/Schlosser sought delay claims for indirect costs in the amount of $1,099,325. Prince/Schlosser also submitted two additional claims for direct costs on June 24,

---

[3] Prince/Schlosser submitted the claims pursuant to 27 DCMR § 3803 (2004), which permits a contractor to file claims arising from the contract with the District's contracting officer if the parties are "unable to resolve a dispute . . . through informal discussions."

2009: 1) $32,280.67 for the additional cost of wiring five truck scales; and 2) $8,908.63 for the additional cost of making a concrete solution sulfate-resistant.[4] The District's contracting officer did not approve any of the claims, and Prince/Schlosser appealed to the CAB.

During a hearing before the CAB, the District argued primarily that Prince/Schlosser's delay claims were barred under the contract and that, in any event, all of the claims lacked merit. Specifically, the District asserted that the delay claims were barred because Prince/Schlosser: 1) failed to submit written notice of its intended claims within "[thirty] days after receipt of a written Change Order,"[5] and 2) failed to submit certified "cost or pricing data,"[6] which prevented the District from properly assessing the merits of Prince/Schlosser's claims.

---

[4] The parties attempted to resolve these issues for several months before these claims were submitted but failed to reach an agreement.

[5] Section 3.C of the Standard Contract Provisions states that "[i]f the Contractor intends to assert a claim for an equitable adjustment under this Article, he must, within [thirty] days after receipt of a written Change Order . . . submit to the Contracting Officer a written statement setting forth the general nature and monetary extent of such claim . . ."

[6] Section H.33.E states that "the Contractor shall, before negotiating any price adjustments pursuant to a change order or modification, submit cost or pricing data and certification that, to the best of the Contractor's knowledge and belief, the cost or pricing submitted was accurate, complete, and current as of the date of negotiation of the change order or modification."

The CAB disagreed with the District, and held that Prince/Schlosser's failure to comply with the thirty-day notice requirement was not a violation of the Contract because "[b]oards and courts have generally not strictly enforced such notice requirements absent a finding that the government is prejudiced" by the untimely notice. The CAB concluded that there was no prejudice to the District here because "the District was well aware of the operative facts underlying each of the" delay claims given that Prince/Schlosser "promptly notified the District" of each event leading to the delays. The CAB also held that Prince/Schlosser was not required to submit certified "cost or pricing data" with its delay claims because it filed the claims after it accrued the actual costs associated with the delay, and once Prince/Schlosser incurred "the impact costs by performing changed work, cost or pricing data [was] no longer the basis of negotiation of the adjustment." The CAB determined that Prince/Schlosser complied with the Contract when it provided the actual breakdown of its indirect costs.

Regarding the merits of the claims, the CAB reviewed the Contract, heard testimony from representatives of both parties as well as an expert witness who evaluated the schedule delays, and found that Prince/Schlosser should be awarded damages. Specifically, the CAB found the District responsible for the contractor's indirect costs resulting from the additional work, including: 1) relocating a storm

drainage pipe, 2) installing a fire sprinkler pump, 3) removing a subsurface concrete obstruction, 4) obtaining a fire-suppression system permit, and 5) completing a roof deck modification.[7] It also found the District responsible for the costs incurred from the unanticipated tasks of wiring truck scales and using a sulfate-resistant concrete mix. The CAB calculated the award by adding together Prince/Schlosser's incurred costs for which the CAB concluded the District was responsible, which amounted to $585,498.98.[8] This petition for review followed.

## II.    Discussion

### A.    *Standard of Review*

Contractual interpretation is a legal question, which this court reviews *de novo*. *Tillery v. District of Columbia Contract Appeals Bd.,* 912 A.2d 1169, 1176 (D.C. 2006). We nonetheless "accord great weight to the [CAB's] construction of a government contract, so long as that construction is not unreasonable." *Id.* at

---

[7] The CAB considered but denied Prince/Schlosser's delay claim for costs associated with the delay in obtaining a Master Building Permit because the District was not responsible for that delay. Prince/Schlosser does not challenge this conclusion.

[8] The District does not dispute the CAB's calculations.

1175 (quoting *Unfoldment, Inc. v. District of Columbia Contract Appeals Bd.,* 909 A.2d 204, 208–09 (D.C. 2006)) (alteration in original). In reviewing the CAB's decision, we "look not only to the case law on which the [CAB] relied but to other decisions of the United States Court of Appeals for the Federal Circuit, the former United States Court of Claims and its successors, and the various federal boards of contract appeals." *District of Columbia v. Org. for Envtl. Growth, Inc. ("OFERGO I"),* 700 A.2d 185, 198 (D.C. 1997); *see also Abadie v. District of Columbia Contract Appeals Bd.*, 916 A.2d 913, 919 (D.C. 2007).[9]

---

[9] Preliminarily, Prince/Schlosser contends that the District waived the following three arguments before this court because it did not bring them before the CAB: 1) the District was prejudiced by Prince/Schlosser's late notice of the delay claims, 2) there is no legal basis for Prince/Schlosser's recovery for the roof deck modification delay claim, and 3) there was a patent ambiguity in the contract regarding the truck scales claim. This court will generally not review issues raised for the first time on appeal, yet the principle that an argument is waived if not raised below is "one of discretion rather than jurisdiction." *McClintic v. McClintic*, 39 A.3d 1274, 1277 n.1 (D.C. 2012) (quoting *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33 n.3 (D.C. 2001)). "Moreover, even if a claim was not 'pressed' below, that claim is properly reviewed on appeal if it has been 'passed upon.'" *Id.* Here, the CAB "passed upon" each of the three issues in its decision as it mentioned or analyzed each one. We see no prejudice in reviewing all of the District's arguments and thus find that none of the District's arguments are waived.

**B.     *Prince/Schlosser's Delay Claims are not Barred***

The District relies on two contract provisions to challenge Prince/Schlosser's delay claims for reimbursement and urges this court to adopt a strict adherence approach to interpreting the Contract.  First, the District argues that the delay claims are barred because Prince/Schlosser violated a thirty-day notice requirement found in Article 3 of the "Standard Contract Provisions," which governed the procedures for altering the Contract terms, as modified by Subsection H.33 of the Contract.  Second, the District argues that the delay claims are barred because Prince/Schlosser failed to include certified "cost or pricing data" when it submitted the claims pursuant to Subsection H.33.E of the Contract.  We address each argument in turn.

### 1.     Thirty-Day Notice Requirement

The District argues that the Contract bars Prince/Schlosser's delay claims because the claims are untimely and their untimeliness prejudiced the District. Section C of Article 3 of the Standard Contract Provisions requires the contractor to submit to the contracting officer, in writing, a statement of "the general nature and monetary extent" of any claim it intends to file within thirty days of receiving

a change order.  The District first asserts that this thirty-day notice requirement should be strictly construed to bar all of Prince/Schlosser's delay claims, regardless of prejudice, because Prince/Schlosser submitted the claims over a year and half after receiving the respective change orders.  Alternatively, the District claims that, while it is not required to show prejudice, it was in fact prejudiced because the lack of notice of the upcoming claims prevented the District from mitigating damages to avoid the delays.  We disagree and affirm the CAB's ruling on this issue, concluding that the thirty-day notice requirement should be liberally construed to only bar Prince/Schlosser's claims if failure to give timely notice prejudiced the District, which was not the case here.

Recent case law in our jurisdiction interpreting notice requirements within government construction contracts is scarce.  However, contract appeal boards and federal courts have adopted a flexible stance on notice requirements for delay claims:  that they should be liberally construed and only strictly enforced where the government is unaware of the circumstances surrounding the delay claims, thereby prejudicing the government.[10]  *See e.g., K-Con Bldg. Sys., Inc. v. United States*,

---

[10]  We look to other boards of contract appeals and certain federal courts, "which have particular expertise in this area," that have interpreted analogous notice requirements.  *OFERGO I, supra*, 700 A.2d at 198 (quoting *Dano Resource Recovery, Inc. v. District of Columbia*, 620 A.2d 1346, 1351 (D.C. 1993)); *see also*

(continued . . .)

115 Fed. Cl. 558, 573 (2014) ("The notice requirement contained in the contract's changes and suspension of work clauses . . . is flexible; and [the government] has not demonstrated that it was prejudiced by the timing of [the contractor's] notice." (citing *Hoel-Steffen Constr. Co. v. United States,* 456 F.2d 760, 768 (Ct. Cl. 1972))); *Nova Group/Tutor-Saliba v. United States*, 125 Fed. Cl. 469, 474 (2016) ("This case falls squarely within the exception to strict enforcement of the [twenty-day] notice requirement where the Contracting Officer is on notice of the circumstances giving rise to the claim"); *Monster Gov't Solutions, Inc. v. United States Dept. of Homeland Security*, DOTCAB No. 4532, 06-2 BCA ¶ 33,312 (June 7, 2006) ("When a contracting officer has actual knowledge of the facts, lack of written notice does not bar a claim absent evidence of prejudice to the [g]overnment.").

_____

(. . . continued)
*Abadie, supra*, 916 A.2d at 919. Historical support for the liberal approach to notice requirements adopted by other boards of contract appeals and federal courts can be found in *United States v. Cunningham*, 125 F.2d 28, 30 (D.C. Cir. 1941), which involved a government construction contract provision that required the contractor to give the government written notice of any delays to the project "within ten days from the beginning of any such delay." *Id*. at 29. The underlying purpose of the requirement was "to inform the government of the cause of delay and afford an opportunity to remove [the cause of delay]." *Id*. at 30. *Cunningham* held that a contractor's claim is barred "unless the contractor had at the time notified the government in writing of the facts and circumstances" surrounding the delay. *Id.* (internal quotations omitted).

In this case, the CAB recognized that Prince/Schlosser submitted monthly schedule adjustments throughout the project and "[m]onth-by-month, the schedules show the expected completion date slipping further into the future as delaying events occurred." The CAB also noted that "[t]hroughout the period of performance, the District did not reject any of the monthly schedule updates." In fact, after reviewing "the Contract plans and specifications, meeting minutes, daily reports, [requests for information], payment applications, email and other correspondence," the expert witness at the CAB hearing testified that Prince/Schlosser's "periodic schedule updates were consistent with the contract requirements and conformed to industry practice," and that the project would have been completed on time "but for the delays caused by the District." Contrary to the District's arguments, Prince/Schlosser provided timely written notice to the District "of the circumstances giving rise to the claim[s]." *Nova Group/Tutor-Saliba, supra*, 125 Fed. Cl. at 474. The District's assertion that it would have hired another contractor to complete the work had it known of the upcoming delay claims, thereby taking the "opportunity to remove [the cause of the delay]," does not negate the fact that the District was aware of the facts underlying the delay claims, and continued to press forward with the contract. *See Cunningham, supra* note 10, 125 F.2d at 30 (explaining that notice requirements allow the government to eliminate the cause of the delay). There is no prejudice to the District for

Prince/Schlosser's failure to meet the technical requirement to submit its claims within the thirty-day window.

The District contends that we took the opposite approach in *OFEGRO I, supra*, 700 A.2d at 204, where we strictly interpreted the Material Management Manual, which contains a similar thirty-day notice requirement. We disagree. In *OFEGRO I*, we questioned whether the violation of a thirty-day notice requirement would bar a claim, but we did not explicitly hold so. *Id.* at 205. Instead, we remanded the case to the CAB to decide that issue, *id.*, and, on remand, the CAB, citing several CAB decisions and federal court opinions, stated that the thirty-day requirement should be liberally construed and held that a contractor's claim should only be barred where the government is prejudiced.[11] *In re Org. for Envtl. Growth, Inc.*, DCCAB No. D-850, 2001 WL 433422 (Apr. 13, 2001). We now expressly adopt the rule well-established by federal courts and contract appeal boards that the thirty-day notice requirement should be liberally construed. By adopting this rule, we adhere to the sound policy underlying its purpose — that "[i]f the contracting

---

[11] That decision was appealed for a second time, where we stated that the CAB's conclusion appeared to conflict with another ruling in its order, and we remanded the case again for the CAB to address a separate issue. *Abadie v. Org. for Envtl. Growth, Inc. (OFEGRO II)*, 806 A.2d 1225, 1230 (D.C. 2002). In *OFEGRO II*, we gave no further opinion or conclusion on how the thirty-day notice requirement should be interpreted or applied.

officials have knowledge of the facts or problems that form the basis of a claim and are able to perform necessary fact-finding and decision[-]making," the government is not prejudiced by a late claim and should not be permitted to avoid compensating a contractor for services provided simply due to the contractor filing a late claim. *Calfon Const. Inc. v. United States*, 18 Cl. Ct. 426, 438–39 (1989).

### 2. Certified Cost or Pricing Data

The District also argues that the delay claims are barred because Prince/Schlosser failed to submit certified "cost or pricing data" with its request for compensation, which prevented the District from properly assessing the merits of the contractor's claims. The District relies on Subsection H.33.E of the Contract which provides that:

> the Contractor shall, <u>before</u> negotiating any price adjustments pursuant to a change order or modification, submit cost or pricing data and [a] certification that, to the best of the Contractor's knowledge and belief, the cost or pricing data submitted was accurate, complete, and current as of the date of negotiation of the change order or modification.

The Contract explains that cost and pricing data:

> includes all facts as of the time of price agreement that prudent buyers and sellers would reasonably expect to

affect price negotiations significantly. Cost or pricing data are factual, not judgmental, and are therefore verifiable. While they do not indicate the accuracy of the *prospective* Contractor's judgment about *estimated future* costs or projections, cost or pricing data do include the data forming the basis for that judgment.[12]  (emphasis added)

The District's reliance on Subsection H.33.E.1 of the Contract is misplaced. Prince/Schlosser did not bring these claims when costs were prospective but instead brought them post-performance when the actual costs incurred were readily available.  Rather, *Subsection H.33.C.2* of the Contract is the applicable provision. It states that "if agreement on costs cannot be reached *prior* to execution of changed work, payment will be made for the *actual* costs[,] provided records of such costs are made available and that such costs are reasonable."  (emphasis added).  Prince/Schlosser submitted a record of the actual costs it incurred, which permitted the District to assess the merits of the claims.[13]  *See Civil Constr., LLC,*

---

[12]  Separate from change orders and modifications, Article 7 of the Standard Contract Provisions explains that the contractor can bring "any dispute concerning a question of fact arising under the Contract which is not disposed of by the agreement," to be decided by the contracting officer in a written decision.  The contractor can then appeal the contracting officer's written decision on the claim to the CAB.  Notably, Article 7 does not require that certified "cost or pricing data" be submitted to the contracting officer with the filed contract claims.

[13]  The District's reliance on the District of Columbia Procurement Rules, 27 DCMR § 1624 (1988), which the District claims requires the submission of certified "cost or pricing data" with contract claims, is also misplaced.  Instead, the

(continued . . .)

CAB Nos. D-1294, D-1413 & D-1417, 2013 WL 3573982, at *16 (Mar. 14, 2013) (stating that actual costs incurred should be submitted when available). We conclude that Prince/Schlosser's delay claims are not procedurally barred, and now turn to the merits of all of Prince/Schlosser's claims for compensation.

### C. *The District Is Not Responsible for the Costs Underlying Three of Prince/Schlosser's Claims*

The District asserts that the language found in the Contract and other documents (including contract modifications signed by the parties, drawings of the proposed work, and specifications of the work in the Contract) indicate that the District is not responsible for the costs underlying all of Prince/Schlosser's claims.[14] We conclude that the District is partially correct; it must compensate

---

(. . . continued)

applicable section of the District of Columbia Procurement Rules is 27 DCMR § 3803.2 (2004), which addresses claims by a contractor and requires that a contractor submit "*any* data or other information in support of the claim," and does not require that the data be certified "cost or pricing data." (emphasis added). Prince/Schlosser met this requirement by submitting its actual cost breakdown, and thus the claims are not barred.

[14] In addition to challenging the merits of the delay claims, the District argues that the CAB incorrectly placed the burden of proof on the District to prove that there were concurrent causes of the delays, which is inconsistent with federal contract law that requires the contractor to prove that the delays caused by the District were "not concurrent with a delay caused by the contractor or some other

(continued . . .)

Prince/Schlosser for the costs associated with its claims except for the three claims

_____

(. . . continued)

reason." *P.J. Dick Inc. v. Principi*, 324 F.3d 1364, 1370 (Fed. Cir. 2003). In the District of Columbia, however, the CAB has established that the "District bears the burden of proving concurrency" as an "affirmative defense to liability for delay damages." *MCI Constructors, Inc.*, DCCAB No. D-924, 1996 WL 331212 (June 4, 1996). The CAB acknowledged in footnote 53 of the order that this affirmative defense is different from the burden generally placed on the contractor in federal contract law. The CAB supported this distinction by citing *Williams Enterprises v. Strait Mfg. & Welding Inc.*, 728 F. Supp. 12, 16, 23 (D.D.C. 1990), *aff'd sub nom. Williams Enters., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230 (D.C. Cir. 1991), where the United States District Court for the District of Columbia stated that defendants, such as the District in this case, "have the burden of proof of claim in the District [of Columbia]" for affirmative defenses "tending to exculpate defendants from liability." We will not disturb the legal standard for the burden of proof of concurrent delays adopted by the CAB in this jurisdiction. *See OFEGRO I, supra*, 700 A.2d at 198 ("On questions of law, although the Board's decision is not final or conclusive, 'we give careful consideration to [its] interpretation because legal interpretations by tribunals having expertise are helpful even if not compelling.'").

The District also points to the language in Section H.33.C of the Contract governing changes in the time period of performance, which states that Prince/Schlosser is required to "describe in detail" how a change in the time period of performance "affects the . . . concurrency with other delays," and points to Section H.33.D, which states that the project would only be extended by the number of days "which is not concurrent with another delay for which a time extension" has been requested. The District argues that this language places the burden on Prince/Schlosser to disprove concurrency and requests that we remand for the CAB to apply that burden on Prince/Schlosser. However, remand on this issue is not necessary because the record reflects that Prince/Schlosser did indeed proffer an expert witness who testified that "there was no concurrent delay of [Prince/Schlosser's] making," and the CAB accepted this conclusion.

discussed in this section: 1) the delay claim for the storm drainage pipe relocation, 2) the delay claim for the fire pump installation, and 3) the constructive change claim for wiring truck scales. We reverse the CAB's holdings for these claims because the CAB misinterpreted the Contract and incorrectly applied the law.

## 1. Delay Claim for Relocating Storm Drainage Pipe

While laying concrete during the performance of the Contract, Prince/Schlosser discovered a storm drainage pipe that interfered with its work. Prince/Schlosser was not previously aware of the pipe because the District incorrectly indicated the pipe's location in the project drawings that it gave to Prince/Schlosser. Prince/Schlosser notified the District of the problem by submitting Proposed Change Order No. 20. In response, the District's contracting officer issued Basic Change Directive No. 3, directing Prince/Schlosser to relocate the pipe, and Basic Change Directive No. 5, directing Prince/Schlosser to fill and replace the storm drains. This additional work of relocating the pipe caused delays, and Prince/Schlosser incurred additional costs as a result.

The contracting officer also issued Change Order No. 3, which compensated Prince/Schlosser for the direct costs of the additional work but contained language releasing the District

> from any and all actual or potential claims and demands for *delays* and disruptions, additional work which the contractor or any person claiming by, through, or under the contractor, may now have, or may in the future, have against the District of Columbia government, for . . . *any manner connected with the subject Change Order or the prosecution of the work hereunder.* (emphasis added)

Change Order No. 3 referenced Basic Change Directive Nos. 3 and 5 and specifically listed the task of "[d]emolishing the existing storm sewer pipe at column lane #1 and filling it with concrete," among other tasks. The District claims that the language in Change Order No. 3 releases the District from liability for any "claims and demands for delays" resulting from the storm drainage pipe relocation because that work was referenced in the change order and is therefore "connected with" Change Order No. 3.

The CAB held that the release language did not apply to the storm drainage pipe work because Change Order No. 3 did not reference any of Prince/Schlosser's Proposed Change Orders including Proposed Change Order No. 20, which specifically discussed the storm drainage pipe work. Yet, Change Order No. 3 referenced the contracting officer's Basic Change Directive No. 3, which directed

Prince/Schlosser to relocate the pipe, and Basic Change Directive No. 5, which directed Prince/Schlosser to fill and replace the storm drains. Change Order No. 3 also listed the task of demolishing the storm drainage pipe. Because Change Order No. 3 expressly referenced the storm drainage pipe work, the District is released from liability for any delay claims seeking additional compensation for relocating the storm drainage pipe. *Patterson v. District of Columbia*, 795 A.2d 681, 683 (D.C. 2002) ("[T]he written language of a contract governs the parties' rights unless it is not susceptible of clear meaning.").

### 2. Delay Claim for Fire Pump Installation

Under the Contract, Prince/Schlosser had the responsibility of designing and installing a fire-suppression system for the project, but the Contract's drawings and specifications did not indicate whether a fire pump would be necessary for the fire-suppression system. Before awarding the Contract, Prince/Schlosser asked the District for clarification regarding whether a fire pump was a necessary element of the fire suppression system. The District responded that a fire pump was not necessary as long as the system's performance requirements could "be met with available water supply." During the performance of the Contract, the parties discovered that a fire pump *was* necessary to meet the performance requirements,

and the contracting officer ordered Prince/Schlosser to furnish and install a fire pump. The installation led to delays in the project, which caused Prince/Schlosser to incur additional costs. The District issued Change Order No. 5, authorizing additional compensation of $108,224 for this work, but it did not compensate Prince/Schlosser for the indirect costs of the delay such as increased overhead and lost profits.

The CAB held that Prince/Schlosser was entitled to compensation for the delay costs resulting from the installation of the fire pump because the fire pump was not included in the original Contract. The failure to include the fire pump in the original Contract, the CAB held, was a breach of the implied warranty that the plans and specifications would produce an acceptable result. *See White v. Edsall Constr. Co.,* 296 F.3d 1081, 1084 (Fed. Cir. 2002) (awarding a contractor additional costs resulting from a subtle flaw in the design drawings). We reverse the CAB's decision on this claim because it misapplied the law.

Where the government provides drawings or specifications that a contractor must adhere to, the document creates an implied warranty that the specifications are accurate and, if followed, will yield satisfactory results. *Id*. at 1084–85. But, "[t]his implied warranty attaches only to design specifications detailing the actual

method of performance" and "does not accompany performance specifications that merely set forth an objective without specifying the method of obtaining the objective." *Id.* at 1084. The Contract provisions discussing the fire suppression system were "performance specifications," which gave Prince/Schlosser discretion to choose the method of completing the system. The Contract makes clear that the fire-suppression system was a performance specification because it tasked Prince/Schlosser with "designing, fabricating, and installing" the fire-suppression system but did not elaborate on how this task should be completed. Prince/Schlosser acknowledged that the work was a performance specification in communications with the District by distinguishing the task from other work that had to be "performed per plans and specs." As a result, the fire-suppression system work was a performance specification, and the implied warranty does not apply.[15] *See White v. Edsall Contr. Co., supra*, 296 F.3d at 1084; *see also District of Columbia v. Savoy Constr. Co.,* 515 A.2d 698, 702 (D.C. 1986) ("This rule rests on the presumed expertise of the government where it sees fit to prescribe detailed specifications."). We reverse the CAB's holding requiring the District to

---

[15] The fact that the District compensated Prince/Schlosser for the fire pump is not dispositive because, as we stated in *OFEGRO I*, a contractor "may not properly use a change order as an excuse to shift his own risks or losses to the government." *OFEGRO I, supra,* 700 A.2d at 203. Thus, there is no basis to hold the District liable for the delays related to this performance specification.

compensate Prince/Schlosser for the indirect costs for the delay resulting from installing the pump for the fire suppression system.[16]

### 3. Constructive Change Claim for Truck Scales Wiring

Pursuant to the contract, Prince/Schlosser was required to "[f]urnish and install" five truck scales along with their "associated electronic controls." During pre-contract negotiations, Prince/Schlosser informed the District that "Project Drawing E6" did not provide instructions for wiring three of the five truck scales that Prince/Schlosser would be responsible for installing. The District responded in Addendum No. 2, which was later included in the Contract, that "ductbanks will be used by others to automize [sic] the operations of the *two* new scales." (emphasis added). A District representative testified that this answer meant that "other individuals 'outside the contract' would be responsible for the wiring, rather

---

[16] Prince/Schlosser also argues that, even though the work was a performance specification, the District still had the responsibility to ensure that the information provided was accurate and that the District's omission of the fire pump constituted a defect. Prince/Schlosser muddies the waters with this argument. Given that the fire suppression system was a performance specification, Prince/Schlosser carried the responsibility of the method of execution for this part of the project. Moreover, Section 13921 of the Contract Specifications specifically mentions the maintenance of fire pumps in the performance requirements. Therefore, some information about a fire pump was included in the original Contract.

than Prince/Schlosser or its subcontractors." Yet, during the performance of the contract, District representatives required Prince/Schlosser to complete the wiring for all five truck scales.

The CAB held that, although the Contract originally required Prince/Schlosser to complete the wiring, and although Prince/Schlosser's pre-contract inquiry only asked about "the three outbound scales, . . . the District's response reasonably led [Prince/Schlosser] to the conclusion that other entities . . . would be providing the power and signal wiring for the scales." As a result, the CAB held, Prince/Schlosser did not anticipate wiring any of the truck scales and did not account for the cost of that work in its bid for the Contract. Accordingly, the CAB concluded that when the District required Prince/Schlosser to complete the wiring, it was required to provide additional compensation for that work.

However, the District's answer in Addendum No. 2 states that other entities would do the wiring for "the *two* new scales." (emphasis added). Indeed, a District representative confirmed during the hearing that the answer referred to "the *two* inbound scales as opposed to the three outbound scales." There is no other evidence in the record supporting the CAB's application of the language to all five truck scales. Given that Prince/Schlosser's inquiry referred to the three

outbound scales, the District's response about the "*two* new scales" appears non-responsive to Prince/Schlosser's question. The District argues on appeal that there is no support for the CAB's conclusion that a reasonable reading of Addendum No. 2 released Prince/Schlosser from the task of wiring all five truck scales and that the non-responsive answer in Addendum No. 2 created a patent ambiguity about which Prince/Schlosser had the duty to inquire. We agree.

The doctrine of patent ambiguity "is an exception to the general rule of *contra proferentem*, which courts use to construe ambiguities against the drafter." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (quoting *E.L. Hamm & Assocs. v. England*, 379 F.3d 1334, 1342 (Fed. Cir. 2004). The doctrine states that "where a government solicitation contains a patent ambiguity, the government contractor has 'a duty to seek clarification from the government.'" *Id.* Should the contractor fail to inquire about the patent ambiguity during the bidding processes, it is precluded from recovering any costs associated with the ambiguity. *See E.L. Hamm & Assocs., supra*, 379 F.3d at 1342. An ambiguity is deemed to be patent if "it is so glaring as to raise a duty to inquire" regardless of the contractor's interpretation. *Newson v. United States*, 676 F.2d 647, 650 (Ct. Cl. 1982).

The District's answer in Addendum No. 2 constitutes a patent ambiguity. The Contract initially required Prince/Schlosser to install five truck scales. The Contract dictates that Prince/Schlosser is to "[f]urnish and install *three*-70 foot, multi-platform steel deck and *two*-60 foot, mono platform concrete platform motor truck scales and associated electronic controls." Thus, a clear distinction was made between a set of two scales and a set of three scales that needed wiring. Prince/Schlosser inquired about the wiring for three of the scales, and in its response, the District informed Prince/Schlosser that another entity would be wiring two of the scales. While the record shows that the District intended to relieve Prince/Schlosser of the task of wiring the set of two scales, this response "glaringly raises a duty [for Prince/Schlosser] to inquire" about whether the District's response was addressing the three outbound scales referenced in Prince/Schlosser's question to the District. Prince/Schlosser failed to inquire about this ambiguity, and therefore cannot recover the cost of wiring those three scales. Thus, we conclude that Addendum No. 2 only relieved Prince/Schlosser of its responsibility of wiring two of the truck scales, but the District ultimately required Prince/Schlosser to wire those two truck scales, and the District must therefore compensate Prince/Schlosser for the cost of wiring only those two scales. We reverse the CAB's award for this claim and remand for the CAB to adjust the award accordingly.

*D.* *The District Is Responsible for the Costs Underlying the Remaining Claims*

We affirm the CAB's holding regarding the remaining delay claims and summarily address the arguments raised in connection with these remaining claims.

### 1. Delay Claim for Roof Modification

Prince/Schlosser was tasked with installing a roof deck addition for the project. Prior to installing the roof deck addition, the contractor took the required steps to verify that the existing conditions of the roof matched the dimensions in the District's drawings. Upon inspection, Prince/Schlosser discovered a five-inch difference between the height of the existing structure and the height of the roof in the drawings. Prince/Schlosser performed additional work to correct this discrepancy, which caused delays and additional delay costs.[17] The CAB held that the District breached its implied warranty that these drawings, or design specifications, were sufficient and must compensate Prince/Schlosser for the

---

[17] The work ultimately delayed the project by nineteen days and also delayed the installation of the sprinkler system, which was to be connected to the roof deck.

additional work and cost of delay. We agree.[18] *Savoy Constr. Co., supra*, 515 A.2d at 702 (stating that government-issued design specifications create an implied warranty that the specifications are accurate and, if followed, will yield satisfactory results).

### 2. Delay Claim for Subsurface Concrete Obstruction

During the project, Prince/Schlosser encountered subsurface concrete that obstructed its work. The contracting officer issued Change Order No. 4, directing Prince/Schlosser to remove the concrete and compensating it for the additional work but not extending the timeline for the project. The District relies on Section H.33.C of the Contract and argues that, by agreeing to the upward adjustment in the contract price but no adjustment in the period of performance in Change Order No. 4, Prince/Schlosser accepted this price adjustment as full compensation for the work, including any costs of delay. This provision, however, does not bar subsequent delay claims based on the work mentioned in the change order.

---

[18] The District contends that the verification clause in the Contract requiring Prince/Schlosser to verify the work conditions releases the District from any liability for the discrepancy. Such verification clauses in a contract, however, do not override the implied warranty created by design specifications. *See White, surpa*, 296 F.3d at 1086 (holding that the verification clause "did not shift the risk of design flaws to" the contractor). Thus, the implied warranty in the District's design specifications still applied.

Instead, Article 7 of the Standard Contract Provisions allows the contractor to bring "any dispute concerning a question of fact arising under the Contract, which is not disposed of by the agreement." *See supra* note 12. Thus, we affirm the CAB's decision that the District must compensate Prince/Schlosser for those indirect delay costs, which resulted from the concrete obstruction.

### 3. Delay Claim for Obtaining Fire-Suppression System Permit

Under the Contract, Prince/Schlosser had the responsibility of obtaining a fire alarm system permit for the project. Prince/Schlosser requested that the District assist in obtaining the permit by providing plans and project drawings to submit with the application. However, the District's engineers repeatedly mislabeled certain rooms in the drawings, which caused delays in obtaining the approval for the permit. Further, Prince/Schlosser asked one of the District's engineers to meet with the Fire Marshal to assist in the approval process; however, the engineer did not meet with the Fire Marshal until one month before the application was finally approved.

"[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other

party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) (alteration in original). The CAB held that the record reflects reluctance on the District's part to cooperate with Prince/Schlosser in obtaining the permit for the alarm system because the engineers delayed in responding to Prince/Schlosser's request for help and delayed in meeting with the Fire Marshal, which caused the Fire Marshal to approve the application long after the scheduled Contract completion date. The District provides no explanation for its behavior and instead adheres to its argument that Prince/Schlosser had the ultimate responsibility to obtain the permit. The fact that Prince/Schlosser was tasked with obtaining the permit does not overcome the evidence that the District did not fully comply with its duty to cooperate. We affirm the CAB's conclusion that the District did not fully cooperate with Prince/Schlosser in getting the permit, and therefore, is responsible for the costs associated with the delay in obtaining the alarm system permit, and the District must compensate Prince/Schlosser for those delay costs.

**4.      Constructive Change Claim for Concrete Mix**

Just before pouring concrete for the project, Prince/Schlosser notified the District that the project required a different kind of concrete mix. In response, the District directed Prince/Schlosser to use a more expensive sulfate-resistant mix "regardless of what is specified in structural plans or project specifications." The District, however, refused to compensate Prince/Schlosser for the additional cost of the new more expensive concrete mix, which amounted to $8,908.63 in additional costs. In awarding Prince/Schlosser the cost, the CAB relied on an unchallenged finding of fact to conclude that the subcontractor "could have met the strength specifications in the Contract . . . by supplying less expensive concrete of a non-sulfate-resistant mix." Instead, the District directed Prince/Schlosser to use a more expensive mix "regardless of what is specified in structural plans or project specifications." Thus, the District acknowledged that it issued a directive that was outside of the specifications of the Contract. Had Prince/Schlosser known it would have to purchase and use more expensive concrete mix, it would have accounted for the cost in its bid for the Contract. Thus, we affirm the CAB's conclusion that the District is responsible for the cost of the more expensive concrete.

### III.  Conclusion

We hold that the two contractual provisions requiring thirty-day notice and certified "cost or pricing data" do not bar Prince/Schlosser's delay claims.  We conclude, however, that the CAB erred in its interpretation of the contract and application of law for the three claims related to the storm drainage pipe relocation, the fire pump installation, and the truck scales wiring.  We therefore reverse the CAB's order with respect to those three claims and remand to the CAB to adjust the award accordingly.  We otherwise affirm the CAB's decision on the remaining claims related to the roof deck modification, subsurface concrete obstruction, fire-suppression system permit, and concrete mix.

*So ordered.*